1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    D'VAUGHN CORTEZ HILL,                No.  2:20-cv-1998 TLN DB P

12                   Petitioner,

13          v.                            FINDINGS AND RECOMMENDATIONS

14    J. ROBERTSON,

15                   Respondent.

16

17          Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a

18    writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges his conviction imposed by

19    the Solano County Superior Court in 2017 for attempted murder and attempted voluntary

20    manslaughter.  Petitioner alleges his due process rights were violated because there was

21    insufficient evidence to support the intent requirement for the crime of attempted murder, two

22    jury instructions failed to include necessary elements of attempted murder, and the prosecutor

23    committed misconduct.  For the reasons set forth below, this court will recommend the petition be

24    denied.

25                            **BACKGROUND**

26    **I.  Facts Established at Trial**

27          The California Court of Appeal for the First Appellate District provided the following

28    factual summary:

1

In April 2016, friends told Hill that two men, Vanning Johnson and Monty B, were "going to get him." On May 2, 2016, Hill had a gun in his waistband when he stopped at a liquor store in a strip mall on North Texas Street in Fairfield. The parking lot there has two rows of parking spaces between the storefronts and Texas Street. Hill parked his white Lexus in the row of spaces further from the store. A pickup truck was parked in the front row of spaces, in which Keesee was sitting, waiting for his laundry to dry in a laundromat by the liquor store. Hill and Keesee were complete strangers. The liquor store's video cameras clearly recorded the ensuing events.

Inside, Hill brought a soft drink to the counter, and spent some 90 seconds selecting items behind the counter and paying. As he did so, Johnson walked past the store, passing from left to right (as seen from inside) and looking into the store. Hill glanced out the window, made eye contact with Johnson, turned briefly back to the counter, then did a double take and watched Johnson walk by. Hill testified that he saw a bulge in Johnson's pocket that could be a gun, and feared Johnson would enter the store and shoot him unless he acted.

Hill walked toward the front door of the store, pausing several times while looking out in the direction in which Johnson had passed. The door opens to the right, the direction in which Johnson had passed. Keesee's truck was parked a few feet to the right of the liquor store's door (as seen from inside the store). As Hill watched, Johnson walked to the end of the sidewalk in front of the storefronts, paused, then turned and walked away from the storefronts, looking over his shoulder toward the liquor store. As Johnson stepped from the sidewalk to an adjacent concrete island, Hill reached the door of the liquor store and drew his gun. At the same time, Keesee fortuitously opened the door of his truck and began to get out of the truck.

Hill pushed open the door of the liquor store and began firing at Johnson while walking slowly toward him. Johnson ran from him, beyond the concrete island. Keesee stood outside his truck with the front door still open, watching Johnson. The first of three frames of video from the store's external cameras, attached as an appendix to this opinion, shows the men's positions after Hill opened fire.

Hill continued to walk toward Johnson, firing his gun, until he stood directly in front of Keesee's truck. Hill fired 14 shots. Johnson, hit by several shots, fell briefly to his knees as his gun dropped from his pocket. He quickly spun to a seated position on the asphalt, facing Hill (and Keesee), grabbed the gun, and began to fire back at Hill, grazing him with two bullets.

At that point, Hill and Keesee each turned and ran from Johnson. Hill ran along the passenger side of Keesee's truck toward his car. Keesee ran back along the driver's side of his truck. As he turned behind the truck, away from Johnson, he unwittingly ran towards Hill. As shown in the second frame of video, the two men emerged from either side of the truck on a collision course. When Hill unexpectedly confronted Keesee, he raised his gun, veered away from Keesee, and fired a single shot into Keesee's torso from close range, as shown in the third frame of video.

2

The shot nicked one of Keesee's vertebrae, and he fell instantly to the ground. Hill kept running towards his car. He spent more than 20 seconds fumbling for his keys and getting in the car while Keesee—unable to stand—rolled out of the car's path. Hill then drove away.

Johnson and Keesee survived their injuries. Hill was tried on two counts of attempted murder (Pen. Code, §§ 664, 187), and the jury was charged as well on the lesser included offenses of attempted voluntary manslaughter. Hill testified in support of his claimed perfect or imperfect self-defense and heat of passion.

People v. Hill, No. A154192, 2019 WL 3162197, at *1-2 (Cal. Ct. App. July 16, 2019).[1]

## II. Procedural Background

### A. Judgment and Sentencing

As to Johnson, the jury found Hill not guilty of attempted murder but guilty of attempted voluntary manslaughter; as to Keesee, the jury found Hill guilty of attempted murder. The jury also found true as to both offenses firearm and great bodily injury enhancements (Pen. Code, §§ 12022.53, subds. (b), (c), (d), 12022.7, subd. (a)). The court sentenced Hill to three years, four months in prison for attempted voluntary manslaughter, consecutive to a term of thirty-two years to life for attempted murder.

Hill, 2019 WL 3162197, at *2.

### B. State Appeal and Federal Proceedings

Petitioner filed a timely appeal.  On appeal, he challenged only his conviction for attempted murder.  (ECF No. 13-13.)  The Court of Appeal for the First Appellate District denied the appeal.  (ECF No. 13-14.)  The California Supreme Court denied petitioner's petition for review.  (ECF No. 13-15.)

Petitioner filed the present petition for a writ of habeas corpus on October 6, 2020.  (ECF No. 1.)  Respondent filed an answer and lodged the state court record.  (ECF Nos. 12, 13.)  Petitioner did not file a traverse.

### STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28

---

[1] A copy of the Court of Appeal's decision can also be found in the state court record lodged by respondent at ECF No. 13-14.

1   U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

2   application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

3   U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

4       Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

5   corpus relief:

6          An application for a writ of habeas corpus on behalf of a person in
          custody pursuant to the judgment of a State court shall not be granted
7          with respect to any claim that was adjudicated on the merits in State court
          proceedings unless the adjudication of the claim –
8
          (1) resulted in a decision that was contrary to, or involved an
9          unreasonable application of, clearly established Federal law, as
          determined by the Supreme Court of the United States; or
10
          (2) resulted in a decision that was based on an unreasonable
11         determination of the facts in light of the evidence presented in the State
          court proceeding.
12

13      For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

14  holdings of the United States Supreme Court at the time of the last reasoned state court decision.

15  Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011)

16  (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "'may be

17  persuasive in determining what law is clearly established and whether a state court applied that

18  law unreasonably.'"  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th

19  Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle

20  of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not

21  announced."  Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S.

22  37 (2012)).  Nor may it be used to "determine whether a particular rule of law is so widely

23  accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be

24  accepted as correct."  Id. at 64.  Further, where courts of appeals have diverged in their treatment

25  of an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

26  Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

27      A state court decision is "contrary to" clearly established federal law if it applies a rule

28  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

4

precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003)

(quoting Williams, 529 U.S. at 405-06).  "Under the 'unreasonable application' clause of §

2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct

governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that

principle to the facts of the prisoner's case.'"  Lockyer v. Andrade, 538 U.S. 63, 75 (2003)

(quoting Williams, 529 U.S. at 413); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  "[A]

federal habeas court may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously

or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 411;

see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 ("It is not

enough that a federal habeas court, in its independent review of the legal question, is left with a

firm conviction that the state court was erroneous." (Internal citations and quotation marks

omitted.)).  "A state court's determination that a claim lacks merit precludes federal habeas relief

so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652,

664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a

state prisoner must show that the state court's ruling on the claim being presented in federal court

was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2).  Hibbler v. Benedetti, 693

F.3d 1140, 1146 (9th Cir. 2012).  He may show the state court's findings of fact "were not

supported by substantial evidence in the state court record" or he may "challenge the fact-finding

process itself on the ground it was deficient in some material way."  Id. (citing Taylor v. Maddox,

366 F.3d 992, 999-1001 (9th Cir. 2004), abrogated by Murray v. Schriro, 745 F.3d 984, 999-1000

(9th Cir. 2014)[2]); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court

---

[2] In Kipp v. Davis, 971 F.3d 939, 953 n.13 (9th Cir. 2020), the court explained the effect of
Murray on Taylor: "In *Murray I*, we recognized that *Pinholster* foreclosed *Taylor*'s suggestion
that an extrinsic challenge, based on evidence presented for the first time in federal court, may
occur once the state court's factual findings survive any intrinsic challenge under section

1   makes factual findings without an opportunity for the petitioner to present evidence, the fact-

2   finding process may be deficient and the state court opinion may not be entitled to deference.).

3   Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the

4   normal standards of appellate review," could reasonably conclude that the finding is supported by

5   the record.  Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

6          The second test, whether the state court's fact-finding process is insufficient, requires the

7   federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-

8   finding process] is pointed out would be unreasonable in holding that the state court's fact-finding

9   process was adequate."  Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d

10  943, 972 (9th Cir. 2004)).  The state court's failure to hold an evidentiary hearing does not

11  automatically render its fact-finding process unreasonable.  Id. at 1147.  Further, a state court may

12  make factual findings without an evidentiary hearing if "the record conclusively establishes a fact

13  or where petitioner's factual allegations are entirely without credibility."  Perez v. Rosario, 459

14  F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

15         The court looks to the last reasoned state court decision as the basis for the state court

16  judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

17  "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from

18  a previous state court decision, [this court] may consider both decisions to 'fully ascertain the

19  reasoning of the last decision.'"  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

20  banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)).  "When a federal claim

21  has been presented to a state court and the state court has denied relief, it may be presumed that

22  the state court adjudicated the claim on the merits in the absence of any indication or state-law

23  procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption may be

24  overcome by showing "there is reason to think some other explanation for the state court's

25  decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

26  _____
    2254(d)(2). *Murray I*, 745 F.3d at 999–1000. Kipp does not present an extrinsic challenge so

27  *Murray I's* abrogation of *Taylor* on this ground is irrelevant here."  Similarly, in the present case,
    there is no extrinsic challenge based on evidence presented for the first time in federal court so

28  Murray's limitation of Taylor is not relevant.

6

Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 568 U.S. 289, 293 (2013).  When it is clear, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

If a petitioner overcomes one of the hurdles posed by section 2254(d), the federal court reviews the merits of the claim de novo.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").  For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the] claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding.  See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

## ANALYSIS[3]

Petitioner contends there was insufficient evidence of malice for the jury's attempted murder verdict, the jury instructions failed to include the requirement that the prosecution disprove imperfect self-defense and heat passion, and the prosecutor committed misconduct in closing argument.

////

////

////

---

[3] Petitioner makes arguments on the form petition.  He attached his petition for review to the California Supreme Court to his federal petition.  This court reviews both documents to determine petitioner's arguments.

**I.  Insufficient Evidence of Malice**

      **A.  Decision of the State Court**

      Because the California Supreme Court denied review without comment, the decision of the state Court of Appeal is the "last reasoned decision of a state court" and the one considered here.  See Stanley, 633 F.3d at 859.

      The Court first set explained the intent requirements for the crime of attempted murder:

> The crime of attempted murder requires a specific intent to kill, i.e., express malice. (*People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*); *People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1138.) "Express malice requires a showing that the assailant ' " 'either desire[s] the result [i.e., death] or know[s], to a substantial certainty, that the result will occur.' " ' " (*Smith, supra*, at p. 739.) A person does not act with malice if he sincerely but unreasonably believes in a need to defend himself from the person he tries to kill, or acts in the heat of a passion resulting from provocation he reasonably attributes to the victim. (*People v. Rios* (2000) 23 Cal.4th 450, 460.)

> " 'No specific type of provocation is required, and "the passion aroused need not be anger or rage, but can be any ' " '[v]iolent, intense, high-wrought or enthusiastic emotion' " ' " ' " other than revenge, including fear. (*People v. Millbrook*, *supra*, 222 Cal.App.4th at p. 1139.) To negate malice, passion must obscure a defendant's reason " ' " 'to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation or reflection, and from such passion rather than from judgment.' " ' " (*Id.* at p. 1137.) Imperfect self-defense requires an actual if unreasonable belief in a need " 'to defend oneself from imminent peril to life or great bodily injury.' " (*In re Christian S.* (1994) 7 Cal.4th 768, 773.) If there is some evidence that a defendant charged with attempted murder was subject to such a passion, or sincerely perceived a need to defend himself, the prosecution must prove beyond a reasonable doubt that the defendant did not act in the heat of passion, and did not act with an actual belief in the need to defend himself with deadly force. (*People v. Rios*, *supra*, 23 Cal.4th at pp. 461–462; *Millbrook, supra*, at pp. 1136–1137.) If the prosecution fails to bear that burden, the defendant can be convicted only of attempted voluntary manslaughter.

Hill, 2019 WL 3162197, at *2.

      The Court then discussed petitioner's claim.

      *1. Substantial evidence supports the conviction.*

> Hill argues that "[t]here is no reasonable interpretation of the facts other than that Hill acted in the heat of passion and in imperfect self-defense. Hill's actions took place virtually instantly and under the extreme stress of the gun battle, as plainly captured on a surveillance video." He points to his awareness that two men—Johnson and

8

Monty B—had made threats against him. He emphasizes that he encountered Keesee within a second after fleeing from Johnson's gunfire and being grazed by two bullets. When he saw Keesee "running at me [from] the corner of my eye," he testified, he did not know if Johnson "had got[ten] up and was running at me shooting me or ... ha[d] somebody else with him." Noting that the jury found that he had believed he needed to defend himself from Johnson, or had been provoked by Johnson into a heat of passion, Hill contends that his state of mind could not have changed in the second before he saw Keesee. Even assuming that the jury's verdicts with regard to the shootings of Johnson and Keesee were inconsistent with regard to Hill's mental state, it would not follow that the latter verdict must be reversed for lack of substantial evidence. "[I]nconsistent verdicts are allowed to stand if the verdicts are otherwise supported by substantial evidence. '[A]ny verdict of guilty that is sufficiently certain is a valid verdict even though the jury's action in returning it was, in a legal sense, inconsistent with its action in returning another verdict of acquittal or guilt of a different offense.' " (*People v. Miranda* (2011) 192 Cal.App.4th 398, 405, citing *People v. Lewis* (2001) 25 Cal.4th 610, 656.)

Hill also emphasizes that he had no reason to kill Keesee and that, after his first shot left Keesee lying helpless, he could easily have killed him had that been his intent. The prosecution, however, was not required to prove that Hill's motive was to cause Keesee's death. "[M]otive itself is not an element of a criminal offense," and "attempted murder [is] no exception." (*Smith, supra*, 37 Cal.4th at pp. 740–741.) "[T]he act of purposefully firing a lethal weapon at another human being at close range, without legal excuse, generally gives rise to an inference that the shooter acted with express malice. That the shooter had no particular motive for shooting the victim is not dispositive ...." (*Id.* at p. 742.)

Nonetheless, "evidence of motive is often probative of intent to kill." (*Smith, supra*, 37 Cal.4th at p. 741) If a defendant had a motive to kill the victim, that fact supports an inference that, when the defendant performed an act likely to cause the victim's death, he did so with intent to kill. If imperfect self-defense is at issue, inquiry into motive is likely, for the prosecution rarely will have direct evidence for the negative proposition it bears the burden of proving, i.e., that the defendant did not act in a belief that he had to defend himself. One type of circumstantial evidence that can help prove that negative proposition is evidence that the defendant had a motive to try to kill the victim. Thus, while motive is not an element of attempted murder, evidence of motive is in many cases a crucial means of proving that a defendant did not act in self-defense. (*See, e.g., People v. Pertsoni* (1985) 172 Cal.App.3d 369, 375 ["Evidence of [defendant's] motive ... was critically important in ... rebutting his claim of self-defense."]; *People v. Mullen* (1953) 115 Cal.App.2d 340, 343 [in homicide case involving claim of self-defense, "motive is always material"].)

Before the gunfight began, Hill undisputedly had no motive to kill Keesee, a total stranger. The prosecutor argued, however, that Hill did have a motive when Keesee appeared in his path—to escape. As

1
2
3

the video shows, Hill was fleeing the scene when he encountered Keesee running towards him. The prosecutor argued that he chose to remove Keesee, whom he perceived as an obstacle, by shooting him in the torso at close range.

4
5
6
7
8
9
10
11
12
13
14
15
16

Such an act "gives rise to an inference that the shooter acted with express malice." (*Smith, supra*, 37 Cal.4th at 742). In rejecting a contention of prosecutor misconduct, the Supreme Court in *People v. Arias* (1996) 13 Cal.4th 92, 162 observed, "The prosecutor merely illustrated the correct principle that if the jury found defendant's use of a lethal weapon with lethal force was purposeful, an intent to kill could be inferred, even if the act was done without advance consideration and only to eliminate a momentary obstacle or annoyance." Referring to that observation, the court in *Smith* explained: "The point is that where the act of purposefully firing a lethal weapon at another at close range gives rise to an inference of intent to kill, that inference is not dependent on a further showing of any particular motive to kill the victim. This follows from the principle that motive is generally not an element of a crime in the first instance, including the crimes of murder and attempted murder. One may kill with or without a motive and still be found to have acted with express malice." (*Smith*, at pp. 741–742.) It does not matter that Hill "fired only once and then abandoned his efforts out of necessity or fear," or that Keesee "escaped death because of the shooter's poor marksmanship." (*People v. Lashley* (1991) 1 Cal.App.4th 938, 945.) The video shows that Hill looked squarely at Keesee and shot him. Based on the video the jury could reasonably find that Hill did not shoot Keesee in the mistaken belief that he had to defend himself, or in a fit of passion, but that he did so with the aim of removing an obstacle to his immediate escape. Hill's challenge to the sufficiency of the evidence thus fails.

17

Id. at *3.

18

**B.  Legal Standards**

19

The United States Supreme Court has held that when reviewing a sufficiency of the

20

evidence claim, a court must determine whether, viewing the evidence and the inferences to be

21

drawn from it in the light most favorable to the prosecution, any rational trier of fact could find

22

the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,

23

319 (1979).  "A reviewing court may set aside the jury's verdict on the ground of insufficient

24

evidence only if no rational trier of fact could have agreed with the jury."  Cavazos v. Smith, 565

25

U.S. 1, 2 (2011) (per curiam).  Moreover, "a federal court may not overturn a state court decision

26

rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with

27

the state court.  The federal court instead may do so only if the state court decision was

28

'objectively unreasonable.'"  Id. (citing Renico v. Lett, 559 U.S. 766 (2010)).  The Supreme

10

1   Court cautioned that "[b]ecause rational people can sometimes disagree, the inevitable

2   consequence of this settled law is that judges will sometimes encounter convictions that they

3   believe to be mistaken, but that they must nonetheless uphold." Id.

4       **C. Discussion of Challenge to Sufficiency of the Evidence**

5       Petitioner's primary argument relies on state law – that the California Supreme Court's

6   statement in Smith that a jury may infer malice from the intent to remove an obstacle does not

7   conform with more recent California Supreme Court authority defining malice.  He also argues

8   that the facts presented at trial incontrovertibly showed that petitioner could only have shot

9   Keesee in imperfect self-defense or the heat of passion.

10      Issues of state law are not before this court on habeas.  The state court is the arbiter of its

11  own laws.  See Hicks v. Feiock, 485 U.S. 624, 629 (1988) (rejecting argument that state appellate

12  court erred in determining what is required to establish criminal offense and explaining, "[w]e are

13  not at liberty to depart from the state appellate court's resolution of these issues of state law.");

14  Waddington v. Sarausad, 555 U.S. 179, 190 (2009).  Therefore, this court accepts the Court of

15  Appeal's interpretation of California Supreme Court authority that the removal of an obstacle to

16  escape "gives rise to an inference that the shooter acted with express malice."  The question, then,

17  is whether no rational trier of fact could have found petitioner shot Keesee with malice, either

18  because he was attempting to remove an obstacle to his flight or otherwise, rather than in self-

19  defense or in the heat of passion.

20      The movements of petitioner, Johnson, and Keesee shortly before petitioner shot Keesee

21  do not appear to be in dispute.  The jury saw a video of the entire incident.[4]

22      The parties agree that immediately before Johnson started shooting, both Keesee and

23  petitioner started running toward the back of Keesee's car – Keesee on the driver's side and

24  petitioner on the passenger side.  They suddenly met near the back of the car and petitioner shot

25  _____

26  [4] While this court does not have a copy of the video, neither party contends that it did not
    accurately represent what occurred nor do they challenge the Court of Appeal's statements of

27  what the video showed.  This court does not find it necessary, therefore, to view the video.  It's
    also worth noting that three frames from the video are available.  They are attached to the Court

28  of Appeal's opinion.

11

Keesee in the torso.  The issue at trial was petitioner's intent – was he reacting to the sudden appearance of Keesee, who he believed, albeit unreasonably, to be a threat?  Was he so overcome by fear and having just been shot, that he acted in the "heat of passion?"  Or, was he removing an obstacle in the path of his flight?

Keesee testified that he saw petitioner, "paused, and saw he had a gun and realized I was in the middle of a shootout.·  And I tried to run past him, and as I ran past him, he shot me."  (ECF No. 13-4 at 16.)  Keesee also testified that petitioner seemed startled.  (Id. at 39.)  After watching the video tape of the events, Keesee noted that the whole thing took seconds.  (Id. at 34.)

Petitioner testified that friends told him Johnson and "Monty B." were looking for him to kill or hurt him.  (ECF No. 13-7 at 33-36.)  That testimony was confirmed by the testimony of three of petitioner's friends.  (ECF No. 13-6 at 30-64.)  Petitioner started shooting at Johnson because he was afraid Johnson would shoot him first.  When Johnson fell, petitioner started running to his car.  (ECF No. 13-7 at 38, 99.)  As he was running, he felt "two slams hit my back."  Out of the "corner of [his] eye," he saw someone running at him and shot him.  (Id.)  Petitioner testified that he thought Keesee "was shooting at me, too."  Petitioner thought there was "more than one person after me."  (Id. at 41.)  Petitioner testified, "I was scared.  I was shocked.·  We just ran into each other, and I just -- I was scared.·  I fired out of fear.·  I didn't know what was going on or who he was."  (Id. at 80.)

While petitioner testified that he saw Keesee only out of the corner of his eye before shooting him, the Court of Appeal, after reviewing the video, found it showed that petitioner "looked squarely at Keesee and shot him."  Petitioner does not contend that the video showed anything but that.  Further, the second and third still frames provided with the Court of Appeal opinion show Hill looking straight at Keesee as he raises his hand holding the gun and as he shoots Keesee.

The prosecutor argued that petitioner shot Keesee to remove an obstacle to his escape. There was no question that petitioner was running to his car when he encountered Keesee. Petitioner testified to that and Keesee testified that immediately after he was shot, he saw

////

1  petitioner fumble for his keys and get in the car.  Because Keesee was laying in front of the car,

2  he rolled away so he would not be run over.

3       Petitioner makes much of the fact he did not shoot again at Keesee when he was on the

4  ground.  However, as pointed out by the Court of Appeal, if petitioner's purpose was to

5  intentionally remove an obstacle in his path, he did so when he shot Keesee and Keesee fell.

6  Under <u>Smith</u>, then, the jury could infer malice.  And, malice as defined by state law did not

7  require the jury to find that petitioner specifically desired Keesee's death.  The intent requirement

8  could also be satisfied by:  (1) a finding that petitioner knew to a substantial certainty that

9  Keesee's death would occur, and (2) findings that petitioner did not act in imperfect self-defense

10  or in a heat of passion.  Petitioner fails to show that there was no interpretation of the facts that

11  supported those findings.  A reasonable juror could have found petitioner knew to a substantial

12  certainly Keesee would die when he shot Keesee at close range directly into his torso.

13       That same evidence could reasonably have supported a jury finding that petitioner did not

14  act in a heat of passion or in self-defense.  As noted by the Court of Appeal, the jury could have

15  considered the video to show that petitioner had a moment, albeit a very brief one, to see Keesee

16  and know that Keesee was not a threat before shooting.

17       There was at least some evidence from which the jury could determine that petitioner shot

18  Keesee with the requisite intent.  Petitioner fails to show that no rational trier of fact could have

19  inferred malice from his behavior.  Moreover, that is not the only standard this court must apply.

20  To succeed on this claim, petitioner must further show that the Court of Appeal's decision was

21  contrary to or an unreasonable application of clearly established federal law or an unreasonable

22  determination of the facts.  Petitioner fails to make this double-layered showing.  His sufficiency

23  of the evidence claim should be denied.

24  **II.  Instructional Error**

25       Petitioner argues two jury instructions unconstitutionally failed to instruct the jury that the

26  prosecution must prove petitioner did not act in imperfect self-defense or heat of passion in order

27  to convict him of attempted murder.

28  ////

**A. Background**

The jury was instructed with CALCRIM 600, in relevant part:

> The Defendant is charged in counts one and two with attempted murder. To prove that the Defendant is guilty of attempted murder, the people must prove two things:· One, the Defendant took at least one direct but ineffective step towards killing another person, and two, the Defendant acted or the Defendant intended to kill that person.

(ECF No. 13-8 at 128.)

The jury was then instructed with CALCRIM 603:

> An attempted killing that would otherwise be attempted murder is reduced to attempted voluntary manslaughter if the Defendant attempted to kill someone because of a sudden quarrel or in the heat of passion.
>
> A defendant -- the Defendant attempted to kill someone because of a sudden quarrel or the heat of passion if, and this is five things:· The Defendant took at least one step, one that one, direct but ineffective step towards killing a person.· The Defendant intended to kill that person, or the Defendant attempted to kill -- attempted to kill him because he was provoked.· Four, the provocation would have caused a person of average disposition to act rashly and without new deliberation that is in passion rather than from judgment.· And finally, five, the attempted killing was a rash act done under the influence of intense emotion that obscured the Defendant's reasoning or judgment.
>
> Heat of passion does not require anger, rage or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection.
>
> In order for a sudden quarrel or a heat of passion to reduce an attempted murder to attempted voluntary manslaughter, the Defendant must have acted under the direct and immediate influence of provocation as I've refined [sic] it. While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur over a short or long period of time.
>
> It is not enough that the Defendant simply be provoked. The Defendant is not allowed to set up his own standard of conduct. You must decide whether the Defendant was provoked and whether the provocation was sufficient.  In deciding whether the provocation was sufficient, consider whether a person of average disposition would have been provoked and how such an average person would react in the same situation, knowing the same facts.
>
> The People have the burden of proving beyond a reasonable doubt that the Defendant attempted to kill someone and was not acting as a result of a sudden quarrel or in the heat of passion. If the

14

people have not met this burden, you must find the Defendant not guilty of attempted voluntary manslaughter.

(ECF No. 13-8 at 129-30.)

**B. Decision of the State Court**

*2. Hill has not shown prejudicial instructional error.*

Hill contends that the court erred in using CALCRIM No. 600 to define attempted murder because that instruction does not state every element of the crime. It asks if the defendant (1) intended to kill a person and (2) took a direct but ineffectual step toward doing so, but it does not state the necessity of finding the absence of heat of passion and of imperfect self-defense. Hill cites a Supreme Court dissent asserting that jury instructions that fail to require the absence of those two circumstances "are incomplete instructions on the element of malice." (*People v. Breverman* (1998) 19 Cal.4th 142, 189–190 [dis. opn. of Kennard, J.].) But the trial court here completed the instructions with CALCRIM Nos. 603 and 604, which unequivocally told the jury that the prosecution bore the burden of proving the absence of heat of passion and the absence of imperfect self-defense, as well as with CALCRIM No. 200, which told the jury to consider all instructions together. In assessing whether an instruction was erroneous, we "look to the instructions as a whole." (*People v. Franco* (2009) 180 Cal.App.4th 713, 720.) The instructions as a whole were correct.

Hill also contends that the court erred by using CALCRIM No. 603, which has a patent omission: it states that, for heat of passion to reduce attempted murder to attempted voluntary manslaughter, "the defendant must have acted under the direct and immediate influence of provocation as I've defined it" (italics added), yet it never defines "provocation." No other instruction supplied the missing definition of "provocation." Hill contends the omission was prejudicial because the jury likely assumed that Keesee's conduct could constitute "provocation" only if Keesee intended to threaten Hill, which clearly was not the case. [n. 1] Hill contends the court should have instructed the jury that provocation can include "conduct reasonably believed by the defendant to have been engaged in by the victim," regardless of the victim's actual conduct or intent. (*People v. Manriquez* (2005) 37 Cal.4th 547, 583, citing *People v. Brooks* (1986) 185 Cal.App.3d 687, 694.) We question whether the jury would have understood "provocation" to have as limited a meaning as Hill suggests. In all events, Hill did not object to the instruction or request that the court provide a definition of "provocation" that would explain that provocation must be assessed from the perspective of the defendant rather than the victim. He did not request a "pinpoint instruction" relating the particular facts of the case to the elements of the offense, and the court had no sua sponte obligation to give one. (*People v. Rogers* (2006) 39 Cal.4th 826, 877–880; *People v. Garvin* (2003) 110 Cal.App.4th 484, 488–489; *People v. Middleton* (1997) 52 Cal.App.4th 19, 30–31, *disapproved on other ground by People v. Gonzalez* (2003) 31 Cal.4th 745, 752, fn. 3.)

Furthermore, any conceivable error in this respect was harmless.[n. 2] The record reveals no reasonable probability that the jury would have convicted Hill of attempted voluntary manslaughter, based on heat of passion, had it been instructed that "provocation" can be based on "conduct reasonably believed by the defendant to have been engaged in by the victim." (*People v. Manriquez, supra,* 37 Cal.4th at p. 583.) The jury found that Hill did not act in imperfect self-defense. Under the instruction on self-defense, the jury necessarily found that Hill did not believe he was in imminent danger requiring the immediate use of deadly force to defend against the danger. The self-defense instruction required the prosecution to prove that Hill did not actually perceive Keesee as a threat; the heat-of-passion instruction that Hill now argues should have been given would have required proof that Hill did not reasonably perceive Keesee's conduct as a threat. Because the jury found beyond a reasonable doubt that Hill did not actually perceive Keesee as a threat, it necessarily would not have found that he reasonably perceived his conduct as a threat even if the additional instruction had been given.

> [n. 1] Although Hill's brief emphasizes the notable gap in CALCRIM No. 603, i.e., its failure to define "provocation," his argument does not attribute any prejudice to that omission. The only prejudice Hill claims arises from the failure to clarify the perspective from which provocation is assessed—i.e., not from the perspective of the victim, but from that of a reasonable person in the defendant's position.

> [n. 2] Hill contends that the claimed error is of federal constitutional dimension because it deprived him of his right to present a defense and right to a jury trial. However, were there an error, failing to have clarified the perspective from which the jury must assess provocation would be an error of state law, the prejudicial effect of which would be assessed under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Flood* (1998) 18 Cal.4th 470, 487.)

Hill, 2019 WL 3162197, at *4.

**C. Legal Standards**

An incorrect jury instruction under state law does not entitle a petitioner to federal habeas relief.  Such relief is only available if "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Gilmore v. Taylor, 508 U.S. 333, 342 (1993) ("Outside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error. To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief."). The instruction cannot merely be "undesirable, erroneous, or even 'universally condemned.'"

Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  It must violate a constitutional right.  Id.
If the instruction is ambiguous, the court must determine whether there is a reasonable likelihood
that the jury applied the instruction in manner that violates the Constitution.  Estelle, 502 U.S. at
72.  The jury instruction "'may not be judged in artificial isolation,' but must be considered in the
context of instructions as a whole and the trial record."  Id. at 72 (quoting Cupp, 414 U.S. at 147).
The Supreme Court has cautioned that there are few infractions that violate fundamental fairness.
Id. at 72-73; see, e.g., Waddington, 555 U.S. at 191-92; Middleton v. McNeil, 541 U.S. 433, 437
(2004) (per curiam) ("Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury
instruction rises to the level of a due process violation"); Jones v. United States, 527 U.S. 373,
390-92 (1999); Gilmore, 508 U.S. at 344.

Even if the jury instruction is erroneous, habeas petitioners "are not entitled to habeas
relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  Brecht v.
Abrahamson, 507 U.S. 619, 637 (1993) (citation omitted); see also Brown v. Davenport, 142 S.
Ct. 1510, 1517, 1524 (2022).  This requires showing that there is more than a reasonable
probability that the error had a substantial and injurious effect on the jury's verdict.  Brecht, 407
U.S. at 637; see also Davis v. Ayala, 576 U.S. 257, 268 (2015).  If the state court analyzed the
alleged error under Chapman, which asks whether the reviewing court can declare a belief that
the error was harmless beyond a reasonable doubt, a state court's harmless-error determination is
reviewed for reasonableness under § 2254(d).  Ayala, 576 U.S. at 269 ("When a Chapman
decision is reviewed under AEDPA, 'a federal court may not award habeas relief under § 2254
unless the harmlessness determination itself was unreasonable.'") (quoting Fry v. Pliler, 551 U.S.
112, 119 (2007)).  "While a federal habeas court need not 'formal[ly] apply both Brecht and
"AEDPA/Chapman," AEDPA nevertheless 'sets forth a precondition to the grant of habeas
relief.'"  Id. at 268.

### D.  Discussion of Instructional Error Claims

Petitioner argues that CALCRIM 600 failed to instruct the jury that the prosecution bore
the burden of disproving heat of passion and imperfect self-defense in order to find petitioner
committed attempted murder.  As pointed out by the Court of Appeal, the following instruction,

17

CALCRIM 603, would have clarified any confusion regarding the burden of heat of passion by making clear that the prosecutor bore that burden – "The People have the burden of proving beyond a reasonable doubt that the Defendant attempted to kill someone and was not acting as a result of a sudden quarrel or in the heat of passion. If the people have not met this burden, you must find the Defendant not guilty of attempted voluntary manslaughter."

The next instruction, CALCRIM 604, informed the jury that the prosecution bore the burden of proving petitioner did not act in imperfect self-defense:

> [A]n attempted killing that would otherwise be attempted murder is reduced to attempted voluntary manslaughter if the Defendant attempted to kill a person because he acted in perfect[5] [sic] self-defense.
>
> If you conclude the Defendant acted in complete self-defense, his action was lawful and you must find him not guilty of any crime. The difference between complete self-defense and imperfect self-defense depends on whether the Defendant's belief in the need to use deadly force was reasonable.
>
> The Defendant acted in a perfect self-defense [sic] if, and there are five again, the Defendant took at least one direct but ineffective step toward killing a person.· Two, the Defendant intended to kill when he acted.· Three, the Defendant believed that he was in imminent danger of being killed or suffering great bodily injury, and four, the Defendant believed that the immediate use of deadly force was necessary to defend against the danger. But, number five, at least one of the Defendant's beliefs was unreasonable.
>
> Belief in future harm is not sufficient no matter how great or how likely the harm is to believe. The Defendant must have actually believed there was imminent danger of death or great bodily injury to himself.· In evaluating the Defendant's beliefs, consider all of the circumstances as they were known and appeared to the Defendant.
>
> If you find that Vanning Johnson threatened or harmed the Defendant in the past, you may consider that information in evaluating the Defendant's beliefs. If you find that the Defendant knew that Vanning Johnson had threatened or harmed others in the past, you may consider that information in evaluating the Defendant's beliefs.

---

[5] The transcription of this jury instruction misstates the term "imperfect self-defense."  Neither party argues that the transcription correctly reflects what the judge told the jury.  This court therefore assumes, for the sake of this analysis, that the words transcribed as "in perfect self-defense" and "in a perfect self-defense" were read to the jury correctly as "imperfect self-defense."  The text of the standard CALCRIM 604 instruction can be found in the Clerk's Transcript at ECF No. 13-1 at 164-65.

1

> If you find that the Defendant received a threat from someone else that he reasonably associated with Vanning Johnson, you may consider that threat in evaluating the Defendant's belief. doubt that the Defendant was not acting in perfect self-defense [sic].

2

3

> The people have the burden of proving beyond a reasonable doubt that the Defendant was not acting in perfect self-defense [sic]. If the people have not met this burden, you must find the Defendant not guilty of the attempted voluntary manslaughter.

4

5

6  (ECF No. 13-8 at 130-32.)

7      In light of the clear instructions on burden of proof in CALCRIM 603 and 604, petitioner

8  fails to show that the instructions, taken as a whole, were fundamentally unfair or that he suffered

9  actual prejudice as a result of any omission in the CALCRIM 600 instruction.  Petitioner's

10  challenge to that instruction should fail.

11      Petitioner next challenges CALCRIM 603.  He argues that while the court informed the

12  jury that it would define the meaning of "provocation," it failed to do so.  Therefore, the jury

13  could have understood the term to mean that the victim must have provoked the shooter.  There

14  was no evidence that Keesee threatened or in any way provoked petitioner to shoot him.  The

15  Court of Appeal recognized the instruction's omission, but found any error was not prejudicial.

16      The state court used state law standards for prejudice.  The court found that petitioner did

17  not state a federal claim because any omission from the jury instruction was an error of state law.

18  When a state court has not reached the merits of a petitioner's claim, the deferential standard set

19  forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de

20  novo.  Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011).  Even if that is the case here,

21  petitioner fails to establish a due process violation.

22      The prosecutor had to prove petitioner did not act in imperfect self-defense or in a heat of

23  passion.  Even if the jury misinterpreted the heat of passion instruction, because it found no

24  imperfect self-defense, any misinterpretation did not render the proceedings fundamentally unfair.

25  The prosecution needed to disprove one of the elements of imperfect self-defense.  Because the

26  jury found petitioner intended to kill Keesee, it must have also found that petitioner did not

27  perceive an immediate threat that required him to shoot Keesee.  The existence of such a threat

28  ////

19

1   was the basis of petitioner's defense.  Petitioner testified that he thought Keesee was an associate

2   of Johnson's and/or another shooter.  Therefore, petitioner testified, he felt threatened by Keesee.

3            Petitioner's argument here is that the instruction failed to explain that the if petitioner

4   perceived a threat, that was sufficient "provocation."  In finding imperfect self-defense

5   inapplicable, the jury necessarily found petitioner did not perceive an immediate threat.

6   Petitioner fails to show how he was, in fact, prejudiced by the court's failure to define

7   provocation.  Petitioner does not meet the <u>Brecht</u> standard of showing prejudice.  Petitioner's

8   challenge to CALCRIM 603 should fail.

9   **III.  Prosecutorial Misconduct**

10           Petitioner contends the prosecutor's arguments exacerbated the problems identified above

11  – that the jury may not have understood the prosecution had the burden of proving defendant did

12  not act in self-defense or in a heat of passion in order to prove attempted murder.

13           Petitioner challenges the following statements made by the prosecutor in closing

14  argument.

15           This case is about attempted murder. That's where we start is with
16           attempted murder. In order to get off attempted murder, there has to
             be additional information, right, either additional information about
             self-defense or additional information about imperfect self-defense
17           or additional information about heat of passion. But you start off with
             attempted murder because that's what happened here.
18
19           That's what happened and I submit to you you don't need to go
             anywhere beyond attempt murder.·

20  (ECF No. 13-8 at 103.)

21           Now, as you're looking at these claims that they're arguing take you
             away from attempted murder, look at how you have to get there.·
22           How do you have to get to self-defense?· How do you have to get to
             imperfect self-defense?· How do you have to get to heat of passion?·
23           Did you listen to Ms. Prince and her argument?· Well, the Defendant
             said, he said this and so that gets you away from attempt murder and
24           it gets you into another area like self-defense.· The Defendant said
             this.· The Defendant said that. ·
25
                  The Defendant is not credible.· He's not a credible witness
26           before you and he shouldn't be believed, and because of that, you
             don't need to go there.·
27

28  (ECF No. 13-8 at 105-06.)

And this is important because the Defendant testified before you, and in order to get off that attempt murder charge and get to self-defense or get to attempt voluntary manslaughter, you need to believe the Defendant. And I would submit to you and the defense that he has proffered here in this courtroom, which are his witnesses, and we've already gone over the witnesses' testimony and how they're not credible.

(ECF No. 13-8 at 113-14.)

## A. Decision of the State Court

   *3. The prosecutor did not commit prejudicial misconduct.*

Hill contends that the prosecutor committed misconduct in her rebuttal by shifting the burden of proof to him on the issues of self-defense and heat of passion, and that either this misconduct amounts to prejudicial error, or his trial counsel's failure to object amounts to ineffective assistance.

Prosecutorial misconduct " ' "violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' " (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) If conduct does not render a trial "fundamentally unfair," it qualifies as prosecutorial misconduct under California law "if it involves ' " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' " (*Ibid.*) A defendant "may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant [requested] an assignment of misconduct and [also] requested that the jury be admonished to disregard the impropriety." (*Ibid.*)

The prosecutor began her rebuttal as follows: "This case is about attempted murder.... [W]e start ... with attempted murder. In order to get off attempted murder, there has to be additional information ... about [perfect] self-defense or ... imperfect self-defense or ... heat of passion." The prosecutor later rhetorically asked, "How do you have to get to self-defense? ... to imperfect self-defense? ... to heat of passion? Did you listen to [defense counsel's] argument? Well, the defendant said, he said this and so that gets you away from attempt[ed] murder and ... into another area like self-defense. The defendant said this. The defendant said that." The prosecutor then said, "the defendant is not credible ... and because of that, you don't need to go there." Finally, the prosecutor said that "in order to get off that attempt[ed] murder charge and get to [perfect] self-defense or get to attempt[ed] voluntary manslaughter, *you need to believe the defendant.*" (Italics added.) These comments, Hill contends, informed the jury that it could find him guilty of attempted voluntary manslaughter, and not attempted murder, only if it believed his testimony, thus shifting to him the burden of proof regarding imperfect self-defense and heat of passion.

These remarks were not entirely inaccurate. The comment that "to get off attempted murder, there has to be additional information ...

21

about [perfect] self-defense or ... imperfect self-defense or ... heat of passion" correctly stated the law: the prosecution must disprove self-defense or heat of passion only if there is some evidence—offered by either side—that the defendant may have been provoked, or may have perceived danger. (*People v. Rios, supra,* 23 Cal.4th at pp. 461–462.) Nor was it improper to urge the jury not to credit defendant's testimony. Although the prosecution bore the burden of proof on self-defense and heat of passion, it does not follow that the prosecutor could not attack the credibility of Hill's testimony supporting those claims. (*See, e.g., People v. Marquez* (1992) 1 Cal.4th 553, 575–576.)

However, the prosecutor misstated the law when she added, "... and because of that, you don't need to go there [i.e., self-defense or heat of passion]," and stated, "in order to get off that attempt[ed] murder charge ... you need to believe the defendant." Even if the jury did not find Hill credible, it could still "get to attempted voluntary manslaughter," i.e., find that the prosecution had failed to prove beyond a reasonable doubt that Hill did not act in imperfect self-defense or the heat of passion. Based solely on the videos, the jury could have harbored reasonable doubts as to whether Hill had mistakenly seen Keesee as a threat and shot him in self-defense or unreasoning panic.

Nonetheless, Hill forfeited this issue by not objecting or requesting an admonition. Hill contends that an objection would have been futile because it would have emphasized the prosecutor's implication and suggested concern about Hill's credibility. But there is no basis to believe that an objection would not have clarified any possible misunderstanding. The prosecutor herself twice stated unequivocally in her closing that the People bore the burden of proving that Hill did not act in self-defense or the heat of passion. The prosecutor added that she did not mean to misquote the law or misdirect the jury, and urged them to review the instructions, which correctly described the burden of proof. If defense counsel had objected to the improper comments, the court likely would have admonished the jury as to the burden of proof, and the jury would have perceived the exchange as simply correcting a misstatement.

In all events, given the prosecutor's express acknowledgment of the People's burden of proof on those issues, her inaccurate comments were not part of a pattern of egregious misconduct amounting to a denial of due process. (*People v. Samayoa, supra,* 15 Cal.4th at p. 841.) Her isolated misstatements were not a deceptive method of persuading the jury. Moreover, there is no reasonable probability of a different result absent those particular statements. (*People v. Espinoza* (1992) 3 Cal.4th 806, 820–821, citing *People v. Watson, supra,* 46 Cal.2d at p. 835.) Not only did the prosecutor state twice in her closing argument that the People bore the burden of proving that Hill did not act in self-defense or the heat of passion, defense counsel repeatedly echoed that principle in her closing and the court instructed the jury that the People bore the burden of proving those propositions beyond a reasonable doubt. The prosecutor also urged jurors to review and rely on the court's instructions, and those instructions told the jury that, if the "attorneys' comments on the law"

1
2
       conflicted with the court's instructions, the jury must follow the latter. There is no reason to doubt that the jury followed those instructions.

3   Hill, 2019 WL 3162197, at *5-6.

4      **B.  Legal Standards**

5        When considering the constitutionality of a prosecutor's argument, "[t]he relevant

6 question is whether the prosecutors' comments 'so infected the trial with unfairness as to make

7 the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181

8 (1986) (quoting Donnelly, 416 U.S. at 642-43).  "[T]he touchstone of due process analysis ... is

9 the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209,

10 219 (1982).  Under 28 U.S.C. § 2254(d), to succeed on his claim, petitioner must also establish

11 that the Court of Appeal's denial of his claim was contrary to or an unreasonable application of

12 clearly established federal law.

13      **C.  Discussion of Prosecutorial Misconduct Claim**

14        A review of the closing arguments and the jury instructions shows that, despite the

15 prosecutor's misleading statement on the burden of proving imperfect self-defense and heat of

16 passion, a reasonable jurist could find that the jury was sufficiently charged that the burden lay

17 with the prosecution.  In closing arguments, the prosecutor made clear statements that it must

18 prove an absence of imperfect self-defense and heat of passion in order to establish attempted

19 murder.  (See ECF No. 13-8 at 61 ("[Y]ou're going to evaluate whether or not this was done in

20 self-defense, . . .  Remember when evaluating this, the burden still stays on me. [¶] I have to

21 prove that the Defendant did not act in self-defense."); at 67 ("This is not heat of passion, and this

22 is not imperfect self-defense.· Scrutinize.· I want to encourage you.· Even though the burden

23 remains on me to prove that these don't apply, in doing so, you get to scrutinize the defense's

24 case.").)  The defense stressed the point.  (See ECF No. 13-8 at 93 ("[W]e don't have to prove to

25 you that that's what actually occurred. [¶] We don't have the burden of proof.· The People have

26 the burden of proof.· They have to prove not only all the elements, including intent to kill, but

27 they have to prove that Mr. Hill was not acting in self-defense."); at 99-100 ("The People have

28 the burden of proving beyond a reasonable doubt that the Defendant attempted to kill someone

1  and was not acting as a result of a sudden quarrel or the heat of passion.· If the person hadn't --

2  the People have not met this burden, you must find the Defendant not guilty of attempted

3  voluntary manslaughter.").

4       Finally, as discussed above with respect to petitioner's jury instruction challenges, the jury

5  was specifically instructed that the burden lay with the prosecution.  The jury was also told that

6  the attorneys' arguments were just that, arguments, and that it must follow the instructions

7  provided by the court.  If they found any conflict between the argument and the instructions, the

8  jury was told, it must follow the instructions.  (Id. at 119-20.)  Petitioner fails to show the jury

9  would have been so mislead by the prosecutor's comments that it rendered his trial unfair.

10                                **CONCLUSION**

11       Petitioner fails to demonstrate that the Court of Appeal's resolution of the four claims

12  raised here was contrary to or an unreasonable application of clearly established federal law or an

13  unreasonable determination of the facts.  Because petitioner does not meet the standards of 28

14  U.S.C. § 2254(d), IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of

15  habeas corpus be denied.

16       These findings and recommendations will be submitted to the United States District Judge

17  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

18  being served with these findings and recommendations, any party may file written objections with

19  the court and serve a copy on all parties. The document should be captioned "Objections to

20  Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be

21  filed and served within seven days after service of the objections.  The parties are advised that

22  failure to file objections within the specified time may result in waiver of the right to appeal the

23  district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In the objections, the

24  party may address whether a certificate of appealability should issue in the event an appeal of the

25  ////

26  ////

27  ////

28  ////

1  judgment in this case is filed.  <u>See</u> Rule 11, Rules Governing § 2254 Cases (the district court must

2  issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

3  Dated:  September 28, 2022

4

5

6                                                           DEBORAH BARNES
                                                     UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21  DLB:9
    DB Prisoner Inbox/Habeas/S/hill1998.hc fr
22

23

24

25

26

27

28